[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 8, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11381

_____

D. C. Docket No. 03-03002-CV-CAP-1

RICHARD KJELLSEN,

Plaintiff-Appellee,

versus

TERRY MILLS,
WILLIAM H. WALL, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 8, 2006)**

Before BIRCH and BLACK, Circuit Judges and MILLS,* District Judge.

PER CURIAM:

_____

* Honorable Richard Mills, United States District Judge for the Central District of
Illinois, sitting by designation.

Defendants-Appellants Mills, Wall, Callahan, Brown and Herrin (Appellants) appeal the district court's ruling on summary judgment denying them qualified immunity.[1] In particular, Appellants challenge the district court's finding that they provided insufficient evidence that the alleged unconstitutional actions were within their discretionary authority.[2] Based on the evidence set forth in the Appellants' motion for summary judgment and their briefs on appeal, the district court was correct in finding they presented insufficient evidence that the alleged unconstitutional actions were within their discretionary authority. We remand the case for further consideration of the Appellants' motion for summary judgment, however, because, although not presented to either the district court or this Court, there is relevant evidence in the record, in the form of depositions, as to whether Appellants acted in their discretionary capacities. We conclude these depositions need to be fully briefed to and analyzed by the district court.

---

[1] This Court only has jurisdiction over the denial of qualified immunity on interlocutory appeal. *See Mitchell v. Forsyth*, 105 S. Ct. 2806, 2817 (1985) (holding that a district court's denial of a claim of qualified immunity is an appealable final decision so long as it turns on a question of law). We do not address any of the district court's other rulings on summary judgment.

[2] The Plaintiff-Appellee, Richard Kjellsen, alleges the Appellants knowingly failed to report mitigating evidence in the form of several blood tests, which were below the legal level for a *per se* driving under the influence violation. Kjellsen alleges this failure to report resulted in violations of both his Fourth and Sixth Amendment rights.

## I. STANDARD OF REVIEW

This Court conducts *de novo* review on an interlocutory appeal from the denial of qualified immunity. *Tinker v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005). When reviewing a denial of summary judgment on grounds of qualified immunity on interlocutory appeal, this Court takes the facts in the light most favorable to the plaintiff. *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

## II. DISCUSSION

In order to be eligible for summary judgment on grounds of qualified immunity, the Appellants must have been engaged in a discretionary function. *Hollman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004). The Appellants have the burden to make this showing. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003).

In the qualified immunity context, a discretionary function includes actions that "are of a type that fell within the employee's job responsibilities." *Hollman*, 370 F.3d at 1265. This Court asks whether the government employee was (1) performing a legitimate job-related function (pursuing a job-related goal) (2) through means that were within her power to utilize. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994).

In applying the above test, the most difficult task is characterizing a defendant's conduct. If framed too narrowly, such as whether it was within a defendant's discretion to violate a plaintiff's constitutional rights, "the inquiry is no more than an untenable tautology." *Hollman* 370 F.3d at 1266. If framed too generally, such as whether it was within a defendant's discretion to perform acts to further the public interest, then every act performed by a government employee would qualify. *Id.* The test developed by this Circuit is to characterize a government official's actions "at the minimum level of generality necessary to remove the constitutional taint." *Id.* Therefore, applied to this case, we should not ask whether the Appellants had the right to wrongfully withhold mitigating evidence from the prosecutor and the court; rather, this Court should ask whether the Appellants had the power to withhold test results for any reason.

Appellants presented only their individual declarations in both their motion for summary judgment and their brief on appeal to support their claims for summary judgment. The district court correctly indicated that "there must be more than a bald assertion by the defendant that the complained-of actions were undertaken pursuant to the performance of his duties within the scope of his discretionary authority; there must be a showing by competent summary judgment materials of objective circumstances that would compel that conclusion . . . ."

4

*Harbert Int'l Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).  Appellants did not present such evidence in their motion for summary judgment or their briefs.

Such evidence existed, however, in the record.[3]  Appellants filed, although they did not reference, their depositions and the deposition of Amy Burden, the analyst who conducted the tests on the plaintiff's blood.  In these depositions, the Appellants and Amy Burden describe the Georgia Bureau of Investigation's (GBI) procedures for the analysis of blood-alcohol levels in blood samples.  The Appellants should more fully brief and the district court should analyze this evidence on remand.

Several examples of the deposition testimony may be illustrative.  For instance, in Deputy Director Terry Mills's deposition, he stated that "not necessarily all data is reported in any conclusion that any scientist gives anywhere in the world."  In addition, Mills stated that the allegedly mitigating results in this case "had nothing to do with the issue of whether or not the results were the same" but were tested for other reasons.  In more detail, Deputy Director Lisa Callahan testified that "[i]f the results are consistent then it's left up to the analyst to decide

---

[3] The depositions were filed on the same day as the motion for summary judgment, but Appellants' motion for summary judgment never analyzed or even mentioned the depositions in reference to the issue of qualified immunity even though the district court had already found there was insufficient evidence on the discretionary function issue when it denied Appellants' motion to dismiss.

whether or not to report those findings." Deputy Director George Herrin likewise stated that he "would expect an analyst, any analyst to report a result which was inconsistent with their original test. If they had a consistent result with the original test then [he] think[s] it would be at their discretion." For Herrin, "results which are consistent then, you know they're either going to be consistently exculpatory or consistently inculpatory . . . ."

Consistent results, for the GBI employees, have a scientific meaning. Deputy Director Herrin "consider[s] it scientific knowledge . . . if two results are consistent based upon the knowledge of that particular discipline. . . ." According to Herrin, the analyst will "make a call whether or not their answers are consistent." Dr. Robert Brown, the GBI's expert on blood-alcohol testing and Amy Burden's supervisor, believes the analyst uses her "judgment, knowledge and skills to determine what's an acceptable product or not." For a blood-alcohol sample generally, Dr. Brown testified that the "general trend is decreasing (amounts) through time." For Dr. Brown, knowledge of this general decrease, which he has seen as much as a .03 decrease in a given sample, must be incorporated into an analyst's judgment when determining whether the result is consistent. Amy Burden acknowledged that "there could be a decrease based on the volatility of the alcohol over time, over an extended period of time."

6

The alleged mitigating tests in this case were also not run for the purpose of verifying the original result. As Deputy Director Callahan testified, these tests were run to determine whether the samples they were sending out for independent testing were "suitable for testing." Dr. Brown agreed, stating the tests "were not run to be test results. These were run for something entirely different a year later. It would not have been appropriate to" include them in the report.

Based on the above examples, we conclude that even a cursory look at the depositions provides relevant evidence as to whether the Appellants, in their role as GBI employees, were (1) performing a legitimate job-related function (pursuing a job related goal) (2) through means that were within her power to utilize. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994). Whether there is sufficient evidence to prove the Appellants acted in their discretionary function is best left to the district court on remand to further analyze the evidence.[4]

Our determination in this case is informed by the Supreme Court's policy of deciding qualified immunity as early as possible in the proceedings. A ruling on qualified immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*,

---

[4] We do not, however, want to limit the district court to the depositions. If the district court needs more discovery to make the qualified immunity determination, the district court should allow more discovery limited to the issue of whether the Appellants acted in their discretionary capacities.

121 S. Ct. 2151, 2156 (2001). Qualified immunity is not a defense to the merits of the action, but a privilege not to be subject to the burdens of litigation and trial. *Mitchell v. Forsyth*, 105 S. Ct. 2806, 2815 (1985). One of those burdens and expenses is expansive discovery and preparation for trial. *Id.* As a result, the Supreme Court has stressed repeatedly "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 112 S. Ct. 534, 536 (1991). We have concluded that relevant evidence exists as to whether Appellants acted in their discretionary capacities, which was not presented to or analyzed by the district court. We remand for a determination of whether such evidence is sufficient to prevent these government officials from facing the burdens and expenses associated with full discovery, preparation for trial, and the trial itself.

## III. CONCLUSION

Although the Appellants failed to present sufficient evidence that they acted in their discretionary capacities in their briefs to this Court and their motion for summary judgment in the district court, such evidence exists in the record. The district court was correct in finding there was insufficient evidence based on what Appellants presented to it on summary judgment. We remand, however, because of the importance of deciding issues of qualified immunity as early as possible in a

proceeding and because evidence exists in the record that should be more fully briefed to and analyzed by the district court.

**REMANDED.**